INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS OF CALIFORNIA, INC., Plaintiff,

v.

CITY OF LOS ANGELES, a California Municipal Corporation; Emmett C. McCaughey, President of the Los Angeles Board of Airport Commissioners; Elizabeth K. Armstrong, Vice-President of the Los Angeles Board of Airport Commissioners; and Johnnie L. Cochran, Jr., Mary Lou Cunningham, and Samuel Greenberg, members of the Airport Commission, Defendants.

CITY OF LOS ANGELES; the Board of Airport Commissioners of the City of Los Angeles, Plaintiffs,

v.

The INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS OF CALIFORNIA, INC.; International Caucus of Labor Committees; Fusion Energy Foundation; Soldiers of the Cross of Christ; National Anti Drug Coalition, Defendants.

Nos. CV 83–5229–ER, CV 84–0045–ER.

United States District Court, C.D. California.

June 29, 1984.

Barry A. Fisher, Fisher & Moest, Los Angeles, Cal., for plaintiff in No. CV 83–5229–ER and defendant in No. CV 84–45–ER.

David Liberman, Los Angeles, Cal., for plaintiff in No. CV 83–5229–ER.

James R. Karpel, Asst. City Atty., Los Angeles, Cal., for plaintiff in No. CV 84–45–ER and defendant in No. CV 83–5229–ER.

Joseph M. Elie, Engstrom, Lipscomb & Lack, Los Angeles, Cal., for defendant in No. CV 83–5229–ER.

American Legal Ministries, David Llewellyn, Santa Ana, Cal., D. Mark Liberman, Culver City, Cal., for defendant in No. CV 84–45–ER.

RAFEEDIE, District Judge.

On June 11, 1984, the Motion for Summary Judgment of City of Los Angeles requesting declaratory and injunctive relief in both of the above-captioned consolidated matters came on for hearing. Robert C. Moest, attorney for the International Society for Krishna Consciousness, David L. Llewellyn, Jr., attorney for the Soldiers of the Cross of Christ; and Jeffrey S. Cohen, attorney for the Fusion Energy Founda-

tion, National Anti-Drug Coalition and the International Caucus of Labor Committees opposed the City's Motion for Summary Judgment. James R. Karpel represented the City parties.

Upon consideration of the papers submitted by the parties, the file in this case, their oral argument, and its own research, this Court does not find it possible to reach the merits presented by the summary judgment motion. For the reasons set out below, this Court has determined that it does not have subject matter jurisdiction over Case No. 84–0056–ER. This Court does not have jurisdiction over Case No. 83–5229–ER because there is no live controversy.

## BACKGROUND

The first of the two consolidated cases was filed by the International Society of Krishna Consciousness ("ISKCON") against the City. It was filed in state court on July 18, 1983, removed to the federal court August 12, 1983, and a first amended complaint was filed October 24, 1983. The complaint alleges that a resolution passed by the Board of Airport Examiners forbidding "First Amendment activities by any individual and/or entity" at the Central Terminal Area of the Los Angeles International Airport ("LAX")[1] violates the first amendment of the federal constitution,

§ 1983, and article 1, §§ 2, 4, and 7 of the California constitution. Plaintiff seeks declaratory and injunctive relief. The City filed the second lawsuit against ISKCON, the International Caucus of Labor Committees, Fusion Energy Foundation, the National Drug Coalition, and the Soldiers of the Cross of Christ. The City seeks a declaration that the resolution is constitutional and that the listed defendants are violating the resolution, and an injunction forbidding them from violating the resolution in the future.

## DISCUSSION

### Does this Court have Subject Matter Jurisdiction Over the City's Suit for Declaratory and Injunctive Relief?

The City claims that this Court has federal question jurisdiction over its suit, pursuant to 28 U.S.C. § 1331 (1984). But a federal court does not have federal question jurisdiction over a case in which the plaintiff is suing on a state law cause of action and the federal question only arises by way of the defendant's defense or by the plaintiff's rebuttal to the defendant's defense. Applying that principle to the present case, all that the City would need to prove in an affirmative suit would be that the defendant(s) violated a *state*

1. The Board adopted the resolution July 13, 1983. It stated in pertinent part:

   NOW, THEREFORE, BE IT RESOLVED by the Board of Airport Commissioners that *the Central Terminal Area* at Los Angeles International Airport *is not open for First Amendment activities by any individual and/or entity:*
   BE IT FURTHER RESOLVED that the Central Terminal Area at Los Angeles International Airport is only to be used for the promotion and accommodation of air commerce and air navigation or uses incidental thereto unless the Board of Airport Commissioners makes the appropriate findings pursuant to Charter Section 238.8 that a portion of said area is not currently required for the promotion or accommodation of air navigation or uses incidental thereto; and
   BE IT FURTHER RESOLVED that after the effective date of this Resolution, *if any individual and/or entity seeks to engage in First Amendment activities within the Central Terminal Area* at Los Angeles International Air-

   port, *said individual and/or entity shall be deemed to be acting in contravention of the stated policy of the Board of Airport Commissioners* in reference to the uses permitted within the Central Terminal Area at Los Angeles International Airport; and
   BE IT FURTHER RESOLVED that if any individual or entity engaged in First Amendment activities within the Central Terminal Area at Los Angeles International Airport, the City Attorney of the City of Los Angeles is directed to institute appropriate litigation against such individual and/or entity to ensure compliance with this policy statement of the Board of Airport Commissioners; and
   BE IT FURTHER RESOLVED if any entity or individual seeks to engage in First Amendment activities in the vicinity of the Central Terminal Area, those activities must be conducted only on the sidewalks in front of the ticketing buildings and in such a manner so as to not interfere with other persons.

*law.* That the law is constitutional would only come in as a response to defendant's objection that the state law is unconstitutional.

The Supreme Court recently dealt with this very issue.[2] *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), the Court posed the question whether a suit for a declaratory judgment that a state law was consistent with ERISA arises under federal law and answered the question as follows:

> We think not. We have always interpreted what *Skelly Oil* [*v. Phillips Petroleum Co.*] called "the current of jurisdictional legislation since the Act of March 3, 1875," 339 U.S. [667] at 673, 70 S.Ct. [876] at 879 [94 L.Ed. 1194 (1950)] with an eye to practicality and necessity. "What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of causation ... a selective process which picks the substantial causes out of the web and lays the other ones aside." *Gully v. First National Bank,* 299 U.S. [109] at 117–118, 57 S.Ct. [96] at 99–100 [81 L.Ed. 70 (1936)]. *There are good reasons why the federal courts should not entertain suits by the States to declare the validity of their regulations despite possibly conflicting federal law.* States are not significantly prejudiced by an inability to come to federal court for a declaratory judgment in advance of a possible injunctive suit by a person subject to federal regulation. They have a variety of means by which they can enforce their own laws in their own courts, and they do not suffer if the preemption questions such enforcement may raise are tested there.

*Id.* at 2852 (footnotes omitted) (emphasis added).

The City's reply brief unintentionally supports the argument that it is not raising any federal question, except as a defense. The City states:

> There can be no doubt that the controversy between the parties arises out of the federal constitutional and statutory law as well as involving state issues. All of the defendants have claimed that they have federally protected rights to conduct their distribution and soliciting activities in the terminal facilities at LAX.

City's Reply Brief at 25–26.

The Court has not discovered, nor have the parties cited, a single case brought by a state, city or federal government seeking, before the law is enforced, a declaratory judgment that a law is constitutional, with the exception of *Muskrat v. United States,* 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911). *Muskrat* established the longstanding precedent that a federal court will not, before the law is applied, declare laws to be constitutional, because by doing so the court would issue advisory opinions.

The City contends that the consolidation saves it from dismissal. "The City's position as plaintiff in this second case, rather than as a Cross-Complainant joining other necessary and interested parties, is merely because the second, separate suit was the easiest way to bring all necessary parties before the Court." City's Reply Brief at 26. But, the other groups are not necessary parties for ISKON's suit that the resolution is unconstitutional as applied to ISKCON and on its face because only ISKCON would be bound by the ruling if it were unfavorable.[3]

---

**2.** The precise question in *Franchise Tax Board* was whether a case was properly removed from state court. The federal question analysis, however, is the same in both removed cases and cases originally brought in federal courts.

**3.** The procedural problems which would accompany the City's suit for a declaratory judgment support declining to issue such declarations. "All persons who have an interest in the deter-

mination of the questions raised in a declaratory judgment suit should be before the Court." *Diamond Shamrock Corp. v. Lumberman's Mutual Casualty Co.,* 416 F.2d 707, 710 (7th Cir. 1969). The City lists other organizations besides the five named defendants who requested permission to solicit at LAX, and the defendants have mentioned still more groups who they claim have solicited at LAX. These other groups would surely be interested parties in a

Consolidation poses neither a practical nor a theoretical problem. All the circuits which have considered the question have said that consolidated cases retain their separate identities. *Robinson v. Worthington*, 544 F.Supp. 949 (N.D.Ala.1982) recites the applicable law:

> A review of the law concerning consolidation quickly disabused the Court of the notion that actions somehow lose their separate identity upon consolidation. The ruling of the Supreme Court in regard to consolidation prior to the adoption of Rule 42(a) is still regarded as authoritative:
>
> > "Consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of parties, or make those who are parties in one suit parties in another." *Johnson v. Manhattan Railway Co.*, 289 U.S. 479, 496, 497, 53 S.Ct. 721, 727, 77 L.Ed. 1331 (1933).
>
> > "Thus the Courts hold that actions do not lose their separate identity because of consolidation."

*Id.* at 952 (citations omitted).

Therefore, the City's suit for declaratory and injunctive relief is dismissed for lack of subject matter jurisdiction for want of a federal question.

### Does the Suit by ISKCON Raise a "Case of Controversy" Such That This Court Possesses Jurisdiction?

The jurisdiction of federal courts is limited to the adjudication of "cases or controversies" by Art. III, § 2, of the Constitution. The Declaratory Judgment Act, 28 U.S.C. § 2201 applies only to cases of actual controversy. Thus,

> "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

*quoted in Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981).

The standard is heightened by the fact that the plaintiffs seek to have this Court declare the resolution unconstitutional and enjoin its enforcement[4] In such a case, it is especially important that the Court is certain that there is an actual case or controversy between the parties, as the Supreme Court explained in *Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (no case or controversy in suit seeking declaratory judgment on constitutionality of law banning sale of contraceptives when no indication that law would be enforced).

> These considerations press with special urgency in cases challenging legislative action or state judicial action or state judicial action as repugnant to the Constitution. "The best teaching of this Court's experience admonishes us not to entertain constitutional questions in advance of the strictest necessity." ... *[f]ederal judicial power is to be exercised to strike down legislation, whether state or federal, only at the instance*

case brought by the City to prove that the law is unconstitutional, yet they are not parties in this action. Including all interested parties would make this an unmanageable lawsuit. But, unless such groups are included, they would not be bound by the resolution of this case. Were the Court to find the resolution constitutional, this issue would have to be litigated again if the resolution were enforced against nonparties and they contested the constitutionality.

**4.** Were the City the party arguing that no controversy exists, the Court's determination could differ. When a defendant has enforced a stat-

ute in the past, or has reasonably threatened to enforce it, the defendant normally has a heavy burden showing that it will not enforce the law in the future. *See Rabinowitz v. Board of Junior College*, 507 F.2d 1255 (7th Cir.1974). But here ISKCON—who brought the suit—states that it is not worried about prosecution, which strongly indicates that there is no case or controversy. Indeed, at oral argument the City's attorney stated that the City wanted a ruling on the constitutionality of the resolution and a determination whether LAX was a public forum before enforcing the resolution.

*of one who is himself immediately harmed, or immediately threatened with harm, by the challenged action. . . . "This court can have no right to pronounce an abstract opinion upon the constitutionality of a State law. Such law must be brought into actual or threatened operation upon rights properly falling under judicial cognizance, or a remedy is not to be had here."*

367 U.S. at 503, 81 S.Ct. at 1756 (citations omitted) (emphasis added).

The Supreme Court stated the mere existence of a panel statute constitutes insufficient grounds for an adjudication of its merit if "real threat of enforcement is wanting. *Id.* at 507, 81 S.Ct. at 1758. *See also Western Mining Council,* 643 F.2d at 627.

Furthermore, events can render moot actions which once presented a case or controversy. "Simply stated, a case is moot when the issues presented are no longer 'live' or when the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). As the Supreme Court instructed the district court in *Ellis v. Dyson,* 421 U.S. 426, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975):

The district court will find it desirable to examine the current enforcement scheme in order to determine whether, indeed, there is now a credible threat that petitioners ... might be arrested and charged with loitering. A genuine threat must be demonstrated if a case or controversy, within the meaning of Article III of the constitution and of the Declaratory Judgment Act, may be said to exist. . . . Further, the credible threat must be shown to be alive at each stage of the litigation.

421 U.S. at 434, 95 S.Ct. at 1696 (citations omitted).

■ ISKCON argues that there is no present case or controversy before this Court. Its amended complaint alleged that immediately after the resolution was passed, airport officials distributed copies of the resolution to ISKCON members and members of the public. While this may have created a case or controversy when this case was filed, there is none now. ISKCON states that its members have not been harrassed by airport officials. Additionally, the Los Angeles City Charter provides that the airport board "shall have power .... to make and enforce all necessary rules and regulations governing the use and control of all municipal airports within the City of Los Angeles." City Charter Art. XXIV, § 239. The provision goes on to state that "said regulations shall be approved by the Council by ordinance which shall prescribe the penalties for the violation of such rules and regulations." Section 239.2(1) states that the general manager of the airport department "shall have the power and duty to enforce all orders, rules and regulations adopted by the Board." The charter does not provide for the Board to pass *resolutions*, as it has in this case. Nor has the City Council ratified the Board's resolution.

Further evidence that there is not case or controversy "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," *Maryland Casualty Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826, is found in the City's answer to ISKCON's complaint. The city states "defendants, and each of them, deny that Resolution No. 13787 adopted by the Board has been enforced against the plaintiff or against anyone" ¶ 5, and "defendants, and each of them, allege that pursuant to City Charter § 239 all rules must be approved by the City Council." ¶ 6.

■ The City does not substantively address this argument in its reply, except to cite the standard and to observe that ISKCON initiated the suit. That does not change the preceding analysis—the requirement of an actual controversy is jurisdictional and as such, can be raised by any party or the Court sua sponte at any time.

This Court finds that the question whether the resolution violates the first amendment is not an actual case or controversy.

There is not sufficient adversity between the parties to make determination of the federal constitutional question appropriate. This case was therefore improvidently removed and must be remanded to state court.