CARLISLE TOWNSHIP BOARD
OF TRUSTEES, Plaintiff,

v.

HYNOLDS LLC, et al., Defendants.

No. 1:03CV2115.

United States District Court,
N.D. Ohio,
Eastern Division.

Jan. 12, 2004.

David R. Langdon, Cincinnati, OH, Thomas Mangan, Office of the Prosecuting Attorney, Lorain County, Elyria, OH, for Carlisle Township Board of Trustees, Plaintiff.

H. Louis Sirkin, Sirkin, Pinales, Mezibov & Schwartz, Cincinnati, OH, for Hynolds LLC, Agment LLC, Harley Rowe, dba Brass Pole, The, aka South of the Border, Defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

This is a an action for declaratory and injunctive relief, originally filed in the Lorain County Court of Common Pleas. Now before this Court is a motion filed by plaintiff Carlisle Township (the "Township"), seeking remand of this case for lack of subject matter jurisdiction, pursuant to 28 U.S.C. § 1447(c) and Federal Rule of Civil Procedure 12(b)(1). For the following reasons, this Court grants the Township's motion, and orders the case remanded to the Lorain County Court of Common Pleas.

### Background

On August 18, 2003, the Township enacted Resolution No.2003–28 (referred to here, as in plaintiff's Motion, as the "SOB Zoning Resolution"), amending its zoning

laws to include regulation of sexually-oriented businesses. On September 15, 2003, the Township enacted Resolution No.2003–29 (the "AdCab Resolution"), regulating the activities of "adult cabarets" within its borders.

The Township alleges that both the SOB Zoning Resolution and the AdCab Resolution are "applicable to and enforceable against" defendants Hynolds LLC, Agment LLC, and Harley Rowe, d/b/a The Brass Pole, a/k/a South of the Border (collectively "The Brass Pole"). More specifically, the Township takes issue with the activities of The Brass Pole on a site located at 639 Oberlin–Elyria Road, LaGrange, Ohio. The Township claims that, on that site, The Brass Pole is operating a "sexually oriented business," an "adult nightclub" and an "adult cabaret" within the meaning of said resolutions.

On October 2, 2003, the Township filed a Complaint for Declaratory Judgment and Preliminary and Permanent Statutory Injunction in the Court of Common Pleas of Lorain County. In its complaint, the Township stated the above-referenced allegations, and requested various declarations under the Ohio Declaratory Judgment Act, O.R.C. 2721.01, *et seq*. These included, among others:

- "a declaration of the validity and scope of the SOB Resolutions, as written and construed and as applied to Defendants and others;"
- "a declaration of the constitutionality of the SOB Resolutions under the Constitution and laws of the United States and under the constitution, laws, and rules of criminal, civil, and appellate procedure of the State of Ohio;"
- "a declaration that the SOB Resolutions are valid and enforceable, on their face and as applied to 'sexually oriented business' (within the meaning of that term as defined in the SOB

Zoning Resolution) and 'adult cabarets' (within the meaning of that term as defined in the Adult Cabaret Resolution), as written and as bound by the substantive and procedural requirements of the Ohio and United States Constitutions, the Ohio Revised Code, the Ohio Rules of Criminal and Civil Procedure, and decisions of the United States and Ohio Supreme Courts, the Ninth District Court of Appeals, and the applicable decisions declaring federal and constitutional rights and due process requirements by the United States Court of Appeals for the Sixth Circuit and the United States District Court for the Northern District of Ohio[.]"

*See* Township's Complaint, Paragraph 13. The Township also asked the court to enjoin The Brass Pole from "using the Premises [at 639 Oberlin–Elyria Road] for the operation of a sexually oriented business," citing O.R.C. 519.24 as authorizing such relief.

On October 21, 2003, The Brass Pole removed the action for declaratory and injunctive relief to this Court. The Township now challenges the propriety of removal, alleging that this Court lacks subject matter jurisdiction, and prays for remand to the Lorain County Court of Common Pleas under 28 U.S.C. § 1447(c).

## Discussion

### A. Standard for Removal

The Court must remand to state court any civil action in which it does not possess "original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States." 28 U.S.C. § 1441. This "arising under" jurisdiction is conferred by 28 U.S.C. § 1331, which uses the same language. Removal

to federal court is improper unless the action "might have been brought there originally." *Oklahoma Tax Commission v. Graham*, 489 U.S. 838, 840, 109 S.Ct. 1519, 103 L.Ed.2d 924 (1989).

█ Under the "well-pleaded complaint" rule, the Court must look to a plaintiff's complaint in order to determine whether removal is proper. If "a federal question is presented on the face of the plaintiff's properly pleaded complaint," *i.e.*, if the plaintiff invokes federal law as a basis for relief, then the question "arises under" federal law, subject matter jurisdiction is present, and removal to federal court is proper. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.*

Despite reference in the well-pleaded complaint rule to "the face of" a plaintiff's complaint, courts have emphasized that not all invocations of federal law (or references thereto) will render a case removable. Generally, a party may not "recharacterize" a state law claim as a federal claim for the purpose of removal. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The Supreme Court has extended this prohibition, holding that "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint." *Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425, *citing Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)(emphasis in original).

## B. The Township's Claim for a Statutory Injunction

The Brass Pole, in its Memorandum in Opposition to Remand (Docket No. 16),

does not contend that the Township's claim for a statutory injunction under O.R.C. 519.24 "arises under" federal law. Indeed, it should be clear that the federal courts would not possess jurisdiction over this claim.

Nor could The Brass Pole avail itself of the fact that the Township, in Count Two of its Complaint, seeks a declaration "that the SOB Resolutions, and any enforcement or application thereof, are subject to the substantive and procedural requirements of the United States and Ohio Constitutions, laws, and rules[.]" The Township's prayer for a statutory injunction does not demand such an odd declaration, except in anticipation of a possible constitutional defense. As such, *Caterpillar* does not permit recharacterization of the Township's state law claim based on this language.

## C. The Township's Claim for a Declaratory Judgment

█ It is not quite so simple to dispose of the Township's claim for declaratory judgment, in which the plaintiff specifically requests construction of questions of federal law. *See* Complaint, Par. 13, *supra*. The Township cites repeatedly to *Franchise Tax Bd.*, 463 U.S. 1, 103 S.Ct. 2841, in support of its contention that, despite such language, the claim for a declaratory judgment does not present this Court with original federal question jurisdiction.

In *Franchise Tax Board*, the Supreme Court confronted head-on the issue of "arising under" jurisdiction as it applies to claims for state declaratory judgment that demand construction of federal law. The California Franchise Tax Board, seeking to collect unpaid state income taxes, had instituted levies "on funds held in trust for the taxpayers under an ERISA-covered vacation benefit plan." 463 U.S. at 4, 103 S.Ct. 2841. When the plan refused to honor the levies, claiming that ERISA preempt-

ed state law and prohibited compliance, the state Tax Board sought a declaratory judgment to the contrary.

Writing for a unanimous Court (and conceding that the holding derives from "reasons involving perhaps more history than logic," *Id.*), Justice Brennan explained that the Tax Board's invocation of ERISA did not give rise to federal jurisdiction over the declaratory judgment claim. "[U]nder the jurisdictional statutes as they now stand federal courts do not have original jurisdiction, nor do they acquire jurisdiction on removal, when a federal question is presented by a complaint for a state declaratory judgment, but *Skelly Oil* would bar jurisdiction if the plaintiff had sought a federal declaratory judgment." *Id.* at 18–19, 103 S.Ct. 2841 (footnote omitted).

Under this rubric, the next step in the Court's analysis would be to look to *Skelly Oil [v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950) ], and to the possibility of jurisdiction over a hypothetical claim by the Township for a declaratory judgment under the United States Constitution [1]. The Township correctly observes that Justice Brennan's opinion in *Franchise Tax Board* essentially performs this task. Observing that "[f]ederal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment *defendant* brought a coercive action to enforce its rights, that suit would necessarily present a federal question," 463 U.S. at 19, 103 S.Ct. 2841 (emphasis added), Justice

Brennan then explained that *Skelly Oil* does not mandate a similar result for actions brought by a declaratory judgment *plaintiff:*

There are good reasons why the federal courts should not entertain suits by the States to declare the validity of their regulations despite possibly conflicting federal law. States are not significantly prejudiced by an inability to come to federal court for a declaratory judgment in advance of a possible injunctive suit by a person subject to federal regulation. They have a variety of means by which they can enforce their own laws in their own courts, and they do not suffer if the [federal] questions such enforcement may raise are tested there.... The situation presented by a State's suit for a declaration of the validity of state law is sufficiently removed from the spirit of necessity and careful limitation of district court jurisdiction that informed our statutory interpretation in *Skelly Oil* and *Gully [v. First National Bank in Meridian,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936) ] to convince us that, until Congress informs us otherwise, such a suit is not within the original jurisdiction of the United States district courts. Accordingly, the same suit brought originally in state court is not removable either.

*Id.* at 21–22, 103 S.Ct. 2841.

Applying the Supreme Court's holding to a similar adult-entertainment case, the Sixth Circuit also ordered remand, finding

---

1. The difference between the Township's citation to constitutional principles and the state agency's questioning of ERISA pre-emption in *Franchise Tax Board* is of relatively minor import. Wright, Miller, and Cooper have stated the ruling in *Franchise Tax Board* more generally—"there is no federal jurisdiction of a suit by a state to declare the validity of its regulations despite possibly conflicting federal law," 13B Federal Practice and Procedure: Jurisdiction 2d § 3566, at 96—and courts

have displayed a willingness to adopt this formulation. *See Missouri ex rel. Missouri Highway Transp. Comm'n v. Cuffley,* 112 F.3d 1332, 1336 (8th Cir.1997) ("There is a minor distinction between *Franchise Tax Board* and the instant case ... the case at bar presents a conflict between the federal Constitution and state administrative action. [Nonetheless, we] see no reason why the holding in *Franchise Tax Board* should not apply ...").

that "the purported authority to create, and duty to follow, the ordinance arose entirely out of [state] law. Federal law is implicated only by way of a defense—that the statute is unconstitutional under the First Amendment—and only then if plaintiff has established a valid claim under state law." *Bullitt County Fiscal Ct. v. Newsome*, 1995 WL 408183, *2, 1995 U.S. APP. LEXIS 18085, *5 (6th Cir. June 21, 1995).

The Brass Pole attempts to distinguish this case from *Bullitt* by arguing that "the Township seeks a declaration that its zoning resolutions are constitutional under the United States Constitution,"(Defendants' Memo. in Opp. 8) and that the Township's complaint therefore satisfies the well-pleaded complaint rule on its face. Considering the admonishment of *Taylor, supra,* that a party may not "recharacterize" a state law claim as a federal claim for the purpose of removal, in conjunction with the holding in *Franchise Tax Board,* it becomes clear that The Brass Pole advances a distinction without a difference. As in *Bullitt,* the plaintiff in the instant case is a government entity seeking declaratory and injunctive relief notwithstanding possible objections to the constitutionality of its statutes. As in *Bullitt,* the government entity must seek this relief in state court.

### D. The Case or Controversy Requirement

Proper application of the ruling in *Franchise Tax Board* also allows this Court to avoid running afoul of Article III, Section 2, of the United States Constitution, which limits the federal judicial power to resolution of actual "Cases" or "Controversies." As the Eighth Circuit has explained, "[t]he case-or-controversy requirement of Article III applies in declaratory actions, just as it does in coercive actions." *Cuffley,* 112 F.3d 1332 at 1337 (citations omitted). Federal jurisdiction therefore will not extend to such actions in which "the critical

facts involved . . . are hypothetical and speculative." *Id.*

■ This prohibition is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect . . . agencies from judicial interference until [a] decision has been formalized and its effects felt in a concrete way by the challenging parties," *Id., quoting Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 200, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983), and it applies to the facts in this case. The Township comes to court seeking *enforcement* of its SOB and AdCab statutes. Absent such enforcement, the dispute between the local government and the Brass Pole remains purely hypothetical in nature.

A finding to the contrary would place this Court in opposition to "the longstanding precedent that a federal court will not, before the law is applied, declare laws to be constitutional, because by doing so the court would issue advisory opinions." *International Soc'y for Krishna Consciousness v. City of Los Angeles,* 611 F.Supp. 315, 318 (C.D.Cal.1984), *citing Muskrat v. United States,* 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911). *See also* Wright, Miller, and Cooper, 13 Federal Practice and Procedure: Jurisdiction 2d § 3529.1, at 293 *et seq.* ("The oldest and most consistent thread in the federal law of justiciability is that federal courts will not give advisory opinions.") As in *Krishna Consciousness,* the parties here have not been able to cite "a single case brought by a state, city or federal government seeking, before the law is enforced, a declaratory judgment that a law is constitutional." *Id.*

### Conclusion

For the foregoing reasons, the Court grants the Township's motion for remand.

The case shall be transferred to the Lorain County Court of Common Pleas for further proceedings.

IT IS SO ORDERED.